UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PHYLLIS HANNAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No:    2:13CV00053 ERW |
| | ) |
| AUTO-OWNERS INSURANCE COMPANY, | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
EXPERT TESTIMONY OF ERIC BAKER**

COMES NOW Defendant, Auto-Owners Insurance Company ("Auto-Owners"), by and through the undersigned counsel, pursuant to Rule 702 of the Federal Rules of Evidence, and for its Motion to Exclude Expert Testimony of Eric Baker, states in support as follows:

**I.   PRELIMINARY STATEMENT**

This lawsuit arises out of two separate claims Plaintiff made to Auto-Owner's for damage to the roof of her insured property arising out of storms on July 2, 2012 and August 28, 2012. Prior to the first claimed loss, Plaintiff had roof repairs completed on the building that totaled $28,724.50 since 2010. After the first claim was adjusted and paid, Plaintiff had her roof repaired again. Then, after the second storm occurred in August, Plaintiff alleged that there were substantial roof leaks, that the damage from the July 2, 2012 storm was more extensive than originally thought, and that the initial repairs were unsuccessful. When Auto-Owner's sent Allstate Consultants, LLC to reexamine the roof, they found that any leakage and/or water damage was caused by standing water on the roof, negligent or poor patch repair, and other work on the roof that lead to moisture infiltration into the building. Based on Allstate's report, Auto-

Owner's denied the second claim because there was no coverage under the policy. Plaintiff then filed suit.

Specifically, this lawsuit involves the assessment of damages to a mechanically fastened EPDM Roof, metal roof, and water damage to Plaintiff's office. In connection with her claim for damages, Plaintiff produced Eric Baker ("Mr. Baker"), a licensed Public Adjuster, as an expert to prepare a report and opine on the causation of the loss and estimates for repair/replacement of the roof. (Exhibit A, Plaintiff's Expert Disclosure). Mr. Baker also offered deposition testimony on Auto-Owners' claim handling practices.

Mr. Baker's opinion testimony on the issues of (1) damages caused to Plaintiff's mechanically fastened EPDM roof, office, and metal roof and (2) Auto-Owner's claim handling practices should be excluded because they are unreliable and lack sufficient foundation to be admissible as expert testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). His background and lack of knowledge, skill, experience, training, and education with mechanically fastened EPDM roofs and related storm damage prohibits him from knowing what caused damage to Plaintiff's roof. Additionally, Mr. Baker's testimony regarding the damages caused to Plaintiff's mechanically fastened EPDM roof, office, and metal roof fails to consider relevant facts and reliable methodologies, sources, and theories. Finally, Mr. Baker's opinion testimony on Auto-Owners' claim handling practices should be excluded because Plaintiff does not meet the disclosure requirements of Rule 26(a)(2) and Mr. Baker's testimony is based on insufficient facts, knowledge, skill, experience, training, and education.

## II. LAW AND ARGUMENT

### A.  Standard for Excluding Expert Testimony

Federal Rule of Evidence 702 governs admissibility of expert testimony. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)*; Daubert v. Merrell Dow Pharmaceuticals*,

*Inc.*, 509 U.S. 579 (1993). The Eighth circuit has stated that proposed expert testimony must meet three prerequisites in order to be admitted. *Lauzon*, 270 F.3d at 686; Rule 702. First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id*. This is the basic rule of relevancy. *Id*. Second, the proposed witness must be qualified to assist the finder of fact. *Id*. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." *Id*.; *See Daubert*, 509 U.S. at 59.

The basis for the third prerequisite lies in the recent amendment of Rule 702, which adds the following language to the former rule: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.;* Fed. R. Evid. 702.1 The language of the amendment codifies *Daubert* and its progeny, and therefore controls the admissibility of Mr. Baker's opinions. *Id*. Comm. Note; *See, e.g., Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Additionally, if an expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Lift Truck Lease and Service, Inc. v. Nissan Forklift Corp.*, 2013 WL 3154012, *2 (E.D. Mo. 2013) (quoting *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)). An expert's opinion will be deemed 'fundamentally unsupported' when it "fails to consider the relevant facts of the case." *Id*.

The admission of expert testimony lies within the broad discretion of this Court and will not be disturbed on appeal absent an abuse of discretion. *Giles v. Miners, Inc.*, 242 F.3d 810, 812 (8th Cir. 2001). The District Court must ensure that an expert witness does not opine on subjects beyond his expertise, and a courts failure to properly confine expert's testimony solely to matters

3

within his expertise may constitute reversible error. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir.2001). Finally, Plaintiff, as the proponent of Mr. Baker's testimony, "must prove its admissibility by a preponderance of the evidence." *Lauzon*, 270 F.3d at 686.

- **B. Mr. Baker's opinion testimony regarding the damages caused to Plaintiff's mechanically fastened EPDM roof, office, and metal roof must be excluded because it fails to meet the standard of *Daubert* and its progeny.**

  - **1. Mr. Baker does not have sufficient knowledge, skill, experience, training, or education to opine on the damages caused to Plaintiff's mechanically fastened EPDM roof.**

Mr. Baker is of the opinion that Plaintiff's mechanically fastened EPDM roof[1] needs to be fully replaced because it was damaged by hail and wind stemming from the first date of loss on July 2, 2012. (Exhibit B, Mr. Baker's Report); (Baker Dep., Page 69, Line 20 - Page 70, Line 7; Page 114, Lines 11 – 15). However, per the second requirement in *Lauzon*, Mr. Baker's opinion should be excluded because he is not qualified to opine whether the mechanically fastened EPDM roof was damaged by the July 2, 2012 storm, the August 28, 2012 storm, or negligent repair. *Lauzon*, 270 F.3d at 686. The test whether an expert is qualified is whether the witness' training and experience demonstrate a knowledge of the subject matter. *Moran v. Ford Motor Co.*, 476 F.2d 289, 291 (8th Cir. 1973).

   **a. Personal experience.**

Mr. Baker acknowledged that Plaintiff had a mechanically fastened EPDM roof. (Baker Dep., Page 27, Lines 17 – 18). However, he testified that he has never seen or dealt with a mechanically fastened EPDM roof before, including during his tenure as a public adjustor or contractor. (Baker Dep., Page 29, Lines 18 – 25; Page 38, Lines 16 – 22). This alone has a

---

[1] It is important to note there is a difference between a *mechanically fastened* EPDM roof, which Plaintiff had, and a fully adhered or ballasted EPDM system. (Emphasis added). Mechanically fastened EPDM roofs are secured with actual fasteners, while the other two are not. In this case, the type of roof system and its components is directly relevant to be able to make a reliable assessment of its damage, especially as it relates to a storm.

4

drastic impact on ability to reliably evaluate any cause to Plaintiff's mechanically fastened EPDM roof. With respect to EPDM roofs in general, Mr. Baker has only ever evaluated about 10 – 15 EPDM roofs total, and only three EPDM roofs as a public adjuster. (Baker Dep., Page 25, Line 13 – Page 26, Line 6). Finally, he has repaired zero EPDM roofs throughout his career. *Id*. Significantly, Mr. Baker's lack of personal experience with the exact roof he was hired to evaluate is highly suspect.

### b.  Training, education, and employment experience.

Mr. Baker has also testified that he has not received any training related to the effect of storms on EPDM roofs. (Baker Dep., Page 26, Line 21 – Page 27, Line 1). He has only taken a "Mule-Hide" class, which never covered anything relating to storm damage of EPDM roofs. (Baker Dep., Page 26, Lines 9 – 20; Page 26, Line 21 – Page 27, Line 1). Clearly, Mr. Baker lacks the most essential training for which he was hired, *i.e*. the ability to evaluate storm damage to an EPDM roof. Further, Mr. Baker testified that he is not an engineer and does not have an architectural background. (Baker Dep., Page 33, Lines 18 – 23). Rather, his background merely consists of three years of public adjusting work.  (Baker Dep., Page 7, Lines 6 – 11). Prior to that, he was a contractor and worked in construction. (Baker Dep., Page 10, Line 7 – Page 12, Line 5). Under these circumstances, Mr. Baker's knowledge, training, and experience are severely lacking to reliably opine on the storm damage to Plaintiff's mechanically fastened EPDM roof.

### c. Knowledge of mechanically fastened EPDM Roofs

Mr. Baker lacks knowledge of the types of problems mechanically fastened EPDM roofs endure over time. For example, Mr. Baker testified that he did not know how Plaintiff's roof system was supposed to be installed or whether it was improperly installed to begin with. (Baker Dep, Page 27, Line 17 – 23). Mr. Baker then testified he is not aware of ongoing problems with

5

this type of roof installation; he does not know why this type of roof is not installed anymore; and he is not aware of any problems of tears over time in Plaintiff's type of EPDM installation. (Baker Dep., Page 30, Line 23 – Page 31, Line 8). In short, Mr. Baker purports to opine on the damages caused to an EPDM roof, yet lacks the knowledge to know if there was anything wrong with it in the first place. Furthermore, when asked if it was proper to repair EPDM with anything other than EPDM material, he stated he is "not a contractor or an engineer so I don't know". (Baker Dep., Page 32, Lines 16 – 19). Then, when asked whether it is improper to use tar on EPDM, he stated that is a question for an engineer and that he is not an engineer or architect. (Baker Depo, Page 33, Lines 12 – 23). Finally, while Mr. Baker attributed pinholes and seam tears in the roofing system to the storm, he stated he did not know what caused pinholes, seam tears, and was not aware that EPDM can develop pinholes the longer its life. (Baker Dep., Page 81, Lines 5 – 7; Page 87, Line 25 – Page 88, Line 5; Page 89, Line 24 – Page 81, Line 3). Again, Mr. Baker attempts to say what caused damage to an EPDM roof, but he has admitted he cannot identify the already existing problems that such a roof could have. Therefore, whether intentionally or not, his testimony lacks the requisite knowledge to know whether the storm actually caused the damage or whether it was some other problem, *i.e.*, installation, faulty workmanship, faulty repair, normal wear and tear, incorrect materials, etc. Thus, his opinion is unreliable and will not be useful to a jury.

### d. Knowledge of Plaintiff's mechanically fastened EPDM roof.

Likewise, Mr. Baker's lack of knowledge of Plaintiff's mechanically fastened EPDM roof is grossly inadequate. Mr. Baker testified he does not know what was below the EPDM on Plaintiff's roof or that there was another whole roof below the EPDM. (Bake Dep., Page 90, Line 17 – Page 91, Line 2). Yet he is attempting to say water broke through and caused damage. He also stated he was not aware it was installed to have wind go underneath it. (Baker Dep., Page

6

81, Line 20 – Page 82, Line 4). Additionally, Mr. Baker acknowledged the roof was mechanically fastened with plastic washers, but he never saw how they were actually attached to the roof and only saw pieces on the roof. (Baker Dep., Page 27, Line 19 – Page 28, Line 6). He also could not say how far away the mechanical fastening caps should be and admitted that is not his area of expertise. (Baker Dep., Page 29, Line 5 – 12). Again, Mr. Baker fails to consider or know that the roof could have been damaged because of the design or fastening materials. As his opinions are based on his inadequate qualifications, his opinions are speculative at best, and entirely unreliable as they relate to EPDM roofs.

     Clearly, it is evident that Mr. Baker's overall lack of knowledge and experience with mechanically fastened EPDM roofing systems, including Plaintiff's roof, would not allow him to reliably opine that the July 2, 2012 caused the damage to Plaintiff's roof. While the term "knowledge" as used in Rule 702 does not require exact certainty, it does connote more than subjective belief or unsupported speculation. *Pillow v. Gen. Motors Corp.*, 184 F.R.D. 304, 306 (E.D. Mo. 1998). Put simply, Mr. Baker has as much experience with a *mechanically fastened* EPDM roofs as any lay person. It is clear by the fact that he cannot eliminate other causes of damage for the simple reason he does know how mechanically fastened roofing systems work or the problems that arise.  Thus, he is not qualified to know what caused the damage in the first place. Additionally, his opinions are based on no formal training regarding storm damage to an EPDM roof and he has zero instances of experience actually repairing them. Surely, a person qualified to reliably opine on storm damage to an EPDM roof should have at least seen one before or completed storm damage training pertaining to the roof. Therefore, Mr. Baker's opinions regarding damages to Plaintiff's should be excluded because he is not qualified to opine on the subject.

**2. Mr. Baker's opinion testimony regarding damage to Plaintiff's mechanically fastened EPDM roof, office, and metal roof should be excluded because it fails to consider relevant facts and reliable methodologies, sources, and theories.**

Mr. Baker believes Plaintiffs' entire roof needs full replacement because the July 2, 2012 storm caused extreme wind and hail damage to Plaintiff's mechanically fastened EPDM roof, water penetration damage to Plaintiff's office, and hail and leaking damage to Plaintiff's metal roof and siding. (Exhibit B, Mr. Baker's Report). However, in his evaluation, Mr. Baker does not consider essential relevant facts, which renders his opinions fundamentally unsupported. *See Lift Truck Lease*, 2013 WL 3154012 at *2. Additionally, his inspection method, sources, and theories are flawed and unreliable.

**a. Failure to consider relevant facts.**

For obvious reasons, the date when the damage occurred to Plaintiff's building is fundamentally essential to this case. With respect to the hail damage, Mr. Baker testified he saw hail divots on both the metal roof and the EPDM roof, which he attributes to July 2, 2012. (Baker Dep., Page 76 Line 19 – Page 77, Line 14; Exhibit B, Mr. Baker's Report). However, he admitted he did not know either way whether the hail marks on the metal roof on July 2, 2012 were actually from that storm. (Baker Dep., Page 73, Lines 2 – 10). Put another way, Mr. Baker cannot state for certain when the damage occurred, which he purports to definitely offer through his opinions. Significantly, Mr. Baker testified he had not visited the building prior to July 2, 2012. (Baker Dep., Page 67, Lines 7 – 14). He also does not know whether there was interior water damage prior to July 2, 2012, what repairs were done prior to July 2, 2012, what storm damaged occurred prior to July 2, 2012, or what hail damage occurred to the roof prior to July 2, 2012. (Baker Dep., Page 67, Line 20 – Page 68, Line 6).  Regardless, he attempts to opine that all the foregoing damage actually happened on July 2, 2012. (Exhibit B, Mr. Baker's Report). He further admitted he does not know how old the metal roof was or if any repairs had ever been

8

made. (Baker Dep., Page 29, Lines 13 – 17; Page 68, Lines 7 – 12). Lastly, Mr. Baker stated he never reviewed the Allstate Engineer's report with regard to the July 2, 2012 Damage. (Baker Dep., Page 52, Lines 15 – 19). Stated plainly, Mr. Baker's opinion that the July 2, 2012 storm caused the damage is fundamentally unsupported because he fails to consider the condition of the building prior to the storm entirely, which is directly relevant to evaluating damage to any building.

In fact, prior to Mr. Baker's inspection, the roof had been repaired both before and after the July 2, 2012 storm. Nonetheless, Mr. Baker stated he knew that the July 2, 2012 storm caused damage to the roof because it grabbed the roof and pulled up a piece of the EPDM. (Baker Dep., Page 72, Line 23 – Page 73, Line 5). Yet he testified he never knew that same portion of the roof had ripped up prior to that. (Baker Dep., Page 69, Lines 8 – 11). Clearly, Mr. Baker was relying on insufficient facts by failing to consider the roof's damage history. As it stands, Mr. Baker cannot even say that the damage was not already done, which is entirely plausible given the information. Again, an expert's opinion will be deemed 'fundamentally unsupported' when it "fails to consider the relevant facts of the case." See *Lift Truck Lease*, 2013 WL 3154012 at *2. If he performed the due diligence to perform a proper inspection or review the necessary reports, Mr. Baker could have identified and/or ruled out other potential causes of damage other than the July 2, 2012 storm, which *Daubert* and its progeny explains is proper. *See Lauzon* 270 F.3d. at 686.

      **b. Flawed Inspection Method**.

Mr. Baker's cursory and unscientific inspection is further evidence of his flawed method of assessing the roof. In addition to all the information that Mr. Baker testified he did not know about the roof, discussed *supra*, he said he did not pull any piece of the roof up and there was nothing to where he could actually get in the roof. *Id*. Specifically, he admitted there was no way

9

for him to look underneath the roof to see if anything was wrong with it or what it what it was made out of. (Baker Dep., Page 36, Lines 1 – 5). He also stated he did not do any core samples or invasive testing with the roof. (Baker Dep., Page 36, Line 6 – 22). An in-depth inspection of these things is essential to this case because Mr. Baker would have to consider those elements to definitively state that the July 2, 2012 storm caused damage to Plaintiff's roof and not something else, *i.e.*, problems beneath the roof, another storm, faulty workmanship, faulty repair, faulty engineering, *etc*. However, Mr. Baker failed to inspect all of these relevant facts to determine the roof's damage. Again, failing to rule out other potential causes is factor to consider when excluding an expert. See *Lauzon*, 270 F.3d at 686.

### c. Mr. Baker's unreliable sources and flawed theories.

Mr. Baker relied on "sources" that are not sufficiently documented or supported with reliable information. With respect to the hail damage, he testified he relied on the weather records, storm reports from NOAA or Hail Swath, YouTube videos, testimony from building occupants, and his visual inspection to form his opinion that suggests hail occurred on July 2, 2012. (Baker Dep., Page 70, Line 8 – Page 74, Line 8). In addition to admitting he cannot say for sure that the hail damage occurred on July 2, 2012, Mr. Baker could not recall who the individuals were that he talked to about the hail and he did not record their interviews. (Baker Dep., Page 72, Lines 2 – 14). Finally, although Mr. Baker stated that his report had included everything he relied on for his opinions, he did not include any storm reports or document any YouTube videos. (Baker Dep., Page 70, Line 14 – Page 23, Line 23; Page 104, Line 4 – Page 105, Line 19). Thus, none of that information can be substantiated or relied on. Not only does Mr. Baker waver on when the hail damage actually occurred, discussed *supra*, but his testimony is based on insufficient facts and data, which weighs against admissibility. Fed. R. Evid. 702.

Overall, Mr. Baker's testimony is the product of unreliable principles and methods, which is in direct violation of rule 702. *Id*.

With regard to the wind damage, Mr. Baker testified that he did a visual inspection, reviewed an Auto Owner's report, talked to witnesses, and the Plaintiff. (Baker Dep., Page 74, Line 18 – Page 75, Line 17). He opined that the wind billowed the EPDM and ripped the fasteners off the roof. (Baker Dep., Page 77, Lines 18 – 21). However, he stated he did not know if the fasteners were there at the time of the July 2, 2012 storm. (Baker Dep., Page 78, Lines 3 – 9). He does not know if there were any fasteners in that area of the roof at the time of the windstorm.  (Baker Dep., Page 78, Line 18 – 21). It is completely unreasonable and "fundamentally unsupported" for Mr. Baker to opine that the wind ripped the fasteners off the roof when he never knew they were there in the first place. Mr. Baker would have to know the fasteners were actually there on July 2, 2013 to offer his opinion that the wind ripped them off on that date, especially considering the circumstances of interim repairs and other storms. Without that, his opinion is speculative and unreliable.

With regard to the billowing of the roof, Mr. Baker stated he had read articles about billowing and EPDM roofs, but he could not recall what article. (Baker Dep., Page 79, Lines 7 – 11). He later said he read Hague manuals and articles by other engineers on the issue, but could not say what specific articles. (Baker Dep., Page 84, Line 14 – Page 85, Line 5). Mr. Baker's report also said there was bubbling of entrapped moisture, which he later said was based on a theory that he could not recall where it came from.  (Baker Dep., Page 98, Lines 9 – 22). *Daubert* makes it clear that Mr. Baker's testimony must be "scientific ... knowledge", which implies grounding in the methods and procedures of science. *Daubert*, 509 U.S. at 589-90. "Knowledge" of a subject means more than subjective belief or unsupported speculation. *Pillow*, 184 F.R.D. at 306. Here, the above opinions are nothing other than unsupported speculation. Mr.

11

Baker cannot specifically identify any specific articles or theories that he relied on for his opinions. He also does not provide any in his report. Merely suggesting a source as the bases for his opinions is not sufficient, especially considering his tendency to waver between sources.

Likewise, Mr. Baker purported to offer an opinion that the roof needs to be replaced based on the manufacturer specifications. In his report Mr. Baker's states "moisture penetration of insulation does not allow for replacement of only EPDM surface *per manufacturer specifications* the entire underlying insulation must be replaced. (Emphasis added) (Exhibit B, Mr. Baker's Report).  He testified he thinks the roof was manufactured by Firestone and that he "probably" looked up the specifications to support his opinion. (Baker Dep., Page 27, Lines 2 – 4). However, he later admitted the statement probably came from the Hague manuals. (Baker Dep., Page 94, Line 18 – Page 95, Page 96). In fact, William Anderson, Plaintiff's retained roofing expert, advised that the roof manufacturer was Carlisle Syntec Systems. (Anderson Dep., Page 76, Lines 15 – 23). *Daubert* points out that proposed testimony must be supported by appropriate validation—*i.e.*, "good grounds," based on what is known. *Daubert*, 509 U.S. at 589-90. In this instance, Mr. Baker's speculation on the manufacturer is not validated or based on "good grounds". Not only did Mr. Baker waver on his "source", but he attempts to offer an opinion that the roof needs to be replaced per information he has never actually looked up, which renders his opinion entirely unreliable and inappropriate.

Therefore, based on the foregoing, Mr. Baker's opinion testimony regarding the cause of damage to Plaintiff's building must be excluded because it fails to consider relevant facts and reliable methodologies, sources, and theories.

**C. Mr. Baker's opinion testimony regarding Auto-Owner's claim handling practices should be excluded because (1) it does not meet the disclosure requirements of Rule 26(a)(2) and (2) is based on insufficient facts, knowledge, skill, experience, training, and education.**

**1.    Mr. Baker's opinions on claims handling should be excluded because they were not disclosed per the requirements of Rule 26(a)(2).**

Mr. Baker opines that Auto-Owners committed unusual and unreasonable practice adjusting Plaintiff's claim. (Baker Dep., Page 112, Line 4 – Page 119, Line 11). However, Mr. Baker was not disclosed as an expert on claims handling practice nor did he offer a single opinion or analysis in his report. (Exhibit A, Plaintiff's Expert Disclosure; Exhibit B, Mr. Baker's Report).

The Federal Rule of Civil Procedure 26(a)(2)(A) requires that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." When a party fails to provide information ... in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Id*. "When fashioning a remedy, the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id*.

Here, Plaintiff's failure to disclose was not harmless and there was no substantial justification for failing to disclose Mr. Baker's opinions. As nothing was discussed in Mr. Baker's report regarding Auto-Owners claims handling practices, Auto-Owner's was completely surprised by this testimony. The surprise and prejudice to Auto-Owner's as a result of Plaintiff's

failure are significant and have not been cured to date through supplementation or otherwise. Therefore, this court should exclude Mr. Baker's opinions on Auto-Owner's claim handing practices.

### 2. Mr. Baker does not have sufficient knowledge, skill, experience, training, or education to opine Auto-Owner's claim handling practices.

As previously mentioned, Mr. Baker has only three years of public adjusting experience. (Baker Dep., Page 7, Lines 6 – 11). Beyond that, he has never worked for an insurance company, broker, or agent. (Baker Dep., Page 13, Line 5 – 10). Mr. Baker has never written articles or given any presentations about insurance claim handling or underwriting. (Baker Dep., Page 15, Lines 11 - Page 17, Line 7). He has also never written articles or presented on public adjusting. *Id*. Furthermore, Mr. Baker has never had any training or performed any underwriting inspection. (Baker Dep., Page 15, Lines 1 – 6). The only training on public adjusting he has received is through an online course called "The Complete Mentor public adjusting class".

Fed. R. Evid. 702 requires that "the area of the witness's competence [match] the subject matter of the witness's testimony." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006). Additionally, *Daubert* explained that Rule 702 requires district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Here, Mr. Baker's competence as a public adjuster does not include claim handling within the context of an insurance company's unreasonable actions. Mr. Baker's opinion on claim handling issues are not based on any scientific, technical, or specialized knowledge that will otherwise help the jury understand the issue. Moreover, Mr. Baker's overall lack of experience with insurance claim handling practices renders his opinions on the issue completely unreliable. Therefore, this Court should exclude Mr. Baker's opinions regarding Auto-Owner's claims handling practices.

### III. CONCLUSION

Based on the foregoing analysis, Mr. Baker's opinion testimony on the issues of (1) damages caused to Plaintiff's mechanically fastened EPDM roof, office, Metal roof and (2) Auto-Owner's claim handling practices should be excluded because they are unreliable and lack sufficient foundation to be admissible as expert testimony. In short, his background and lack of knowledge, skill, experience, training, and education with mechanically fastened EPDM roofs does not allow him to know if the damage to Plaintiff's roof was caused by the July 2, 2012 storm or something else. Additionally, Mr. Baker's testimony regarding the damages caused to Plaintiff's mechanically fastened EPDM roof, office, and metal roof fails to consider relevant facts and reliable methodologies, sources, and theories. Finally, Plaintiff's disclosed opinion on Auto-Owners' claim handling practices should be excluded as he is not qualified to give such an opinion and it fails to meet the disclosure requirements of Rule 26(a)(2).

WHEREFORE, Defendant Auto-Owner's respectfully request that this Court enter an Order granting its Motion to Exclude Expert Testimony of Eric Baker and for any further relief this Court Deems just and proper under the circumstances.

**BROWN & JAMES, P.C.**

/s/ Jonathan B. Morrow
Robert L. Brady, #MO47522
rbrady@bjpc.com
Jonathan B. Morrow, #MO58661
jmorrow@bjpc.com
800 Market Street, Suite 1100
St. Louis, Missouri 63101
(314) 421-3400
(314) 421-3128 – Fax
*Attorney for Defendant Auto-Owners Insurance Company*

## **CERTIFICATE OF SERVICE**

    A true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system this 16th day of July, 2014, to: **Mr. Corey Jackson** #59993, The Law Offices of Corey Jackson, 3113 Funderburg Mill Drive, Columbia, Missouri 65203-1294, corey@law-jackson.com, *Attorney for Plaintiff*.

                                                                         /s/ Jonathan B. Morrow

*10687-58456*
*11810222*